UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PERUGINI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 16-7694-KK<br><br><br>MEMORANDUM AND ORDER |

Plaintiff Jennifer Perugini ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill as Defendant in the instant case at Plaintiff's request.

# I.
# **PROCEDURAL HISTORY**

On November 26, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of August 24, 2007. Administrative Record[2] ("AR") at 26, 115-17. Plaintiff's application was denied initially on May 14, 2014. Id. at 65-70. On July 15, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 71. On February 2, 2016, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 398-416. A vocational expert ("VE") also testified at the hearing. Id. at 416-20. On February 24, 2016, the ALJ issued a decision denying Plaintiff's application for DIB. Id. at 23-37.

On April 22, 2016, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 15-20. On August 15, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-7.

On October 15, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed May 31, 2017. Dkt. 20, JS.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on September 1, 1959, and her alleged disability onset date is August 24, 2007. AR at 43. She was forty-seven years old on the alleged disability onset date and fifty-six years old at the time of the hearing before the ALJ. Id. Plaintiff completed college and has work experience as a data processing sales representative and project assistant / director. Id. at 401, 417. Plaintiff alleges disability based on tinnitus; migraine headaches; cervical and lumbar disc

---

[2] On April 5, 2017, Defendant filed a Supplemental Certified Administrative Record that is paginated consecutively with the Administrative Record. ECF Docket No. ("Dkt.") 19, AR 396-420. Citations to the Supplemental Certified Administrative Record will thus follow the same citation pattern as the Administrative Record, i.e. "AR."

2

protrusions; cervical stenosis; Raynaud's disease; fibromyalgia; complex regional pain syndrome; and derangement of the shoulder. Id. at 26.

### III.
### STANDARD FOR EVALUATING DISABILITY

To qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

**A.    STEP ONE**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity during the period from her alleged onset date of August 24, 2007, through her date last insured of December 31, 2012." AR at 28.

**B.    STEP TWO**

At step two, the ALJ found Plaintiff "had the following severe impairments: right shoulder impingement syndrome; and degenerative disc disease of the cervical and lumbar spine." Id.

**C.    STEP THREE**

At step three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 29.

**D.     RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

"to perform light work as defined in 20 CFR 404.1567(b) except for any work involving overhead reaching with the right upper extremity."

Id. at 30.

**E.     STEP FOUR**

At step four, the ALJ found Plaintiff is "capable of performing past relevant work as a sales representative and project director." Id. at 33. The ALJ, therefore, found Plaintiff not disabled and did not proceed to step five. Id. at 34.

**V.**

**PLAINTIFF'S CLAIMS**

Plaintiff presents one disputed issue in the present case: Whether the ALJ properly considered Dr. J. Graham Bray's agreed medical opinion when determining Plaintiff's RFC.

**VI.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."

Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

# VII.
# DISCUSSION

**THE ALJ ERRONEOUSLY REJECTED DR. BRAY'S OPINION**

**A.  RELEVANT FACTS**

**1)  The ALJ's Opinion**

To assess Plaintiff's RFC determination, the ALJ reviewed and summarized the opinions and findings of five of Plaintiff's physicians: (1) Dr. J. Graham Bray, an orthopedist; (2) Dr. Pasquale Montesano, a spine surgeon; (3) Dr. Randy Schaefer, an orthopedist; (4) Dr. John Champlin, a family medicine specialist; and (5) Dr. Daniel Fung, an orthopedist. AR at 31-32. The ALJ additionally reviewed and summarized the opinion of the State Agency medical consultant. Id. at 32.

The ALJ highlighted four of the six medical opinions. First, the ALJ noted "opinions from Dr. Montesano and Dr. Bray in November 2006 and July 2007,

respectively precluded [Plaintiff] basically from various physical activities including 'heavy lifting,' under workers' compensation guidelines." Id. at 33. Second, the ALJ observed, in May 2008, Dr. Champlin "restricted [Plaintiff] to lifting of no more than 15 pounds, and no work at or above shoulder height on the right side." Id. Lastly, the ALJ noted the State Agency medical consultant found Plaintiff "could perform medium exertion with limited overhead reaching on the right." Id.

The ALJ prescribed weight to two of the physicians: Dr. Champlin and the State Agency medical consultant. See id. As to Dr. Champlin, the ALJ concluded he was giving "great weight to the opinion of Dr. Champlin, and is construing the 15 pound limit as consistent with light work under Social Security guidelines, which is defined as lifting 10 pounds frequently, and only occasionally lifting items up to 20 pounds." Id. As to the State Agency medical consultant, the ALJ concluded he was giving "great weight to the State Agency medical consultant in this case, who found [Plaintiff] could perform medium exertion with limited overhead reaching on the right." Id. Following assessment of these two physicians' opinions[4], the ALJ concluded Plaintiff "was restricted to less than a full range of light work during the period in question prior to her date last insured, as her complaints of neck, low back and right shoulder pain were supported to a significant degree by the objective findings including clinical examinations and MRI studies." Id.

### 2) The ALJ's Consideration of Dr. Bray's Opinion

From June 21, 2006, to April 9, 2010, Dr. Bray periodically examined Plaintiff for her workers' compensation claims. AR at 259-90. The ALJ reviewed and summarized the findings of three of the five reports completed by Dr. Bray. AR at 31.

---

[4] Although the ALJ did not cite to any medical opinions produced by Dr. Fung, he concluded Dr. Fung's findings did "not technically relate to [Plaintiff's] medical condition and level of functioning prior to [Plaintiff's] date last insured." Id. at 32. Thus, the ALJ concluded he did "not give [Dr. Fung's findings] more than minimal weight." Id.

7

The first report the ALJ reviewed was completed by Dr. Bray on July 26, 2006. Id. The ALJ noted Plaintiff was "complaining of pain in her neck, lower back, and left thigh, with some stiffness and tingling," and additionally, had a "long history of migraine headaches." Id. Plaintiff was diagnosed with "musculoligamentous sprains of the cervical and lumbosacral spine, with left cervical radiculopathy" and was "recommended to undergo further conservative treatment including epidural injections, medications, and physical therapy." Id. While the ALJ noted Dr. Bray's medical findings, he emphasized Dr. Bray's report was created "prior to the [Plaintiff's] alleged onset date, and that [Plaintiff] was still working at that time." Id. The ALJ further emphasized that, at this time, "Dr. Bray was an Agreed Medical Examiner[5] under workers' compensation." Id.

The second report the ALJ reviewed was completed by Dr. Bray on July 30, 2007. Id. The ALJ summarized portions of Dr. Bray's medical notes, and noted Dr. Bray's conclusion that "[Plaintiff] had a 'permanent and partial disability' under workers['] compensation guidelines precluding heavy work and repetitive motions of the neck." Id.

The third report the ALJ reviewed was completed by Dr. Bray on December 4, 2009. Id. The ALJ noted Dr. Bray found Plaintiff "was still symptomatic," but that she "tolerated [physical therapy] well." Id.

**B.　APPLICABLE LAW**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also

---

[5] An agreed medical examiner is a neutral third party medical doctor in workers' compensation claims that is chosen by the parties for their "expertise and neutrality" to examine the applicant. See Iatridis v. Astrue, 501 F. Supp. 2d 1267, 1271 n.9 (C.D. Cal. 2007). As it appears Dr. Bray was not Plaintiff's treating physician, but rather only examining Plaintiff in his capacity as an Agreed Medical Examiner, Dr. Bray's opinions are entitled to the deference given to examining sources. See Campos v. Astrue, No. CV 09-06213-SS, 2010 WL 3749300, at *8 (C.D. Cal. Sept. 21, 2010).

8

20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her or] his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth [her or] his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

While an ALJ is not required to discuss all the evidence presented, he must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Lastly, while an ALJ is "not bound by an expert medical opinion

on the ultimate question of disability," if the ALJ rejects an expert medical opinion's ultimate finding on disability, he "must provide 'specific and legitimate' reasons for rejecting the opinion." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995), as amended (Apr. 9, 1996)). An ALJ is not precluded from relying upon a physician's medical findings, even if he refuses to accept the physician's ultimate finding on disability. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989).

**C. ANALYSIS**

Here, the ALJ failed to provide *any* reasons explaining why he rejected Dr. Bray's findings and opinion regarding Plaintiff's disability. While the ALJ mentioned Dr. Bray's opinion in his RFC analysis and provided a thorough summary of Dr. Bray's agreed medical reports, the ALJ failed to give "specific and legitimate reasons that are supported by substantial evidence in the record" for ultimately rejecting Dr. Bray's opinion. See Carmickle, 533 F.3d at 1164. Hence, the record is unclear as to why the ALJ rejected the opinion. Notably, the ALJ specifically noted Dr. Bray's opinion "precluded claimant basically from various physical activities, including 'heavy lifting,' under workers' compensation guidelines"; yet, the ALJ did not refute or comment on the weight given to Dr. Bray's medical opinion when determining Plaintiff's RFC. AR at 33. Further, the conclusory statement that the ALJ was giving "great weight" to Dr. Champlin and the State agency medical consultant does little to explain the ALJ's reasoning behind rejecting Dr. Bray's opinion or what weight it was afforded in his analysis. Id. at 33. Thus, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Bray's opinion. See Carmickle, 533 F.3d at 1164.

Additionally, to the extent Defendant argues the ALJ properly rejected Dr. Bray's opinion because "opinions rendered for workers' compensation purposes are not binding on the Commissioner," this argument fails. While the ALJ may not be required to adopt Dr. Bray's ultimate opinion, which was rendered for purposes

of workers' compensation litigation, he cannot reject Dr. Bray's medical opinions without explanation simply because they were elicited in another proceeding. See Booth v. Barnhart, 181 F. Supp. 2d 1099 at 1105 (C.D. Cal. 2002); see also Lester, 881 F.3d at 832; Howard v. Colvin, No. EDCV 12-01633-OP, 2013 WL 1773995, at *5 (C.D. Cal. 2013) (holding an ALJ cannot disregard a medical opinion merely because it determines disability based on workers' compensation terminology (citations omitted)). Rather, the ALJ should have translated these "terms of art" in workers' compensation opinions "into the corresponding Social Security disability terminology" and taken those differences into account when evaluating Plaintiff's medical evidence. Booth, 181 F. Supp. 2d at 1106.

## VIII.
## **RELIEF**

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

### B. ANALYSIS

In this case, the record has not been fully developed. The ALJ must either specifically provide clear and convincing reasons for rejecting Dr. Bray's medical

opinion or reassess its impact on the RFC determination.  While Defendant argues that, even if the ALJ erred in discussing Dr. Bray's opinion, any error was harmless, it is not "clear from the record" that the ALJ's error was "inconsequential to the ultimate nondisability determination."  JS at 13; see Robbins, 466 F.3d at 885.  Thus, absent further elucidation or analysis from the ALJ, the Court cannot properly conclude the ALJ's findings were supported by substantial evidence.  See Connett v. Barnhart, 533 F.3d 871 (9th Cir. 2003) (holding that the court was not able to substitute defendant's response for the ALJ's analysis).

Accordingly, remand for further proceedings is appropriate.

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: June 26, 2017

HONORABLE KENLY KIYA KATO
United States Magistrate Judge